UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

CERTAIN UNDERWRITERS AT
LLOYD'S OF LONDON,

                 Plaintiff,

vs.

SCOTT & SCOTT, LLC, MELVIN SCOTT,
and DAVID SCOTT

                 Defendants.

CIVIL ACTION.

COMPLAINT AND
JURY DEMAND

JANUARY 24, 2005

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Plaintiffs Certain Underwriters at Lloyd's of London ("Underwriters"), by and through their attorneys, Horton, Shields & Knox, P.C. as its complaint against Defendants, allege as follows:

1. This is an action for declaratory, equitable and other relief. Underwriters seek a declaration that defendants Scott & Scott, LLC, Melvin Scott, and David Scott (defendants hereinafter referred to collectively as "Scott & Scott" or "Defendants") have no rights under the Lawyers Professional Insurance Liability Policy, number 839/CX3627403 ("Policy"), as more fully described below.

**VENUE AND JURISDICTION**

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332 (a)(2) as it involves a controversy in which there is complete diversity between the parties, with the amount in controversy exceeding $75,000.

3. Under 28 U.S.C. §2201(a), this court may declare the rights of the parties.

4. This Court has personal jurisdiction over the Defendants because Defendants reside in Connecticut and/or do business in Connecticut.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391, because a substantial portion of the events and omissions giving rise to the claim occurred in the District of Connecticut.

## THE PARTIES

6. Underwriters are underwriting members of syndicates participating in the provision of insurance coverage at Lloyd's, London. Underwriters subscribe to Lawyers Professional Insurance Liability Policy, number 839/CX3627403 issued to Defendants, for the policy period May 4, 2003, to May 4, 2004, inclusive.

7. Underwriters subscribing to Lawyers Professional Insurance Policy number 839/CX3627403 do not reside, are not incorporated, and do not have their principal place of business in the State of Connecticut.

8. Upon information and belief, Scott & Scott is a limited liability corporation formed under the laws of the State of Connecticut, with its principle place of business located in Colchester, County of New London, State of Connecticut.

9. Upon information and belief, Scott & Scott regularly transact business and provide legal services in the State of Connecticut.

10. Upon information and belief, Defendant Melvin Scott is the founding shareholder of Scott & Scott and is an attorney duly authorized to practice law in the Courts of the State of Connecticut.

11. Upon information and belief, Defendant Melvin Scott regularly transacts business and provides legal services in the State of Connecticut.

12. Upon information and belief, Defendant David Scott is a managing principal and shareholder of Scott & Scott and is an attorney duly authorized to practice law in the Courts of the State of Connecticut.

13. Upon information and belief, Defendant David Scott regularly transacts business and provides legal services in the State of Connecticut.

## BACKGROUND

14. In February 2004, Scott & Scott reported a claim to Underwriters, which involved a legal malpractice claim by its former client, Brand Rex Company ("Brand Rex").

15. Scott & Scott represented Brand Rex in an underlying contract action between Brand Rex and Arthur, Harris & Associates, Inc. ("AHA") a company based in North Carolina.

16. In 1995, a contract dispute arose between Brand Rex and AHA regarding the amount of commissions owed to AHA, in connection with its sales of Brand Rex cable products in the Southeast United States.

17. Brand Rex retained Defendant David Scott of Scott & Scott to defend its interests.

18. Upon information and belief, on or around December 1996, Brand Rex instituted a declaratory judgment action against AHA in Connecticut Superior Court.

19. On December 28, 1996, AHA commenced a civil action against Brand Rex in the Superior Court for Wake County, North Carolina.

20. Thomas Ross, Esq., Brand Rex's North Carolina counsel, forwarded AHA's discovery requests to Scott & Scott on March 11, 1997.  Mr. Ross informed Scott & Scott that it should begin discovery in North Carolina.

21. Brand Rex moved to dismiss the North Carolina action on the basis of the prior action pending in Connecticut.  However, on March 30, 1997, the Connecticut Superior Court

dismissed Brand Rex's declaratory judgment action on the grounds of lack of personal jurisdiction.

22. On April 8, 1997, Mr. Ross warned Scott & Scott that it should proceed with discovery in North Carolina.

23. Instead of proceeding with discovery, Brand Rex filed a new motion to dismiss the North Carolina state action on April 24, 1997.  This time they argued that AHA failed to exhaust its administrative and contractual remedies.

24. On March 25, 1998, the North Carolina Superior Court denied Brand Rex's second motion to dismiss and thereafter, Brand Rex filed its answer and counterclaim against AHA.

25. From April 1997 to August 1999, Brand Rex and AHA were embroiled in a discovery dispute.

26. On September 14, 1998, the North Carolina Superior Court issued an order granting, in part, AHA's Third Motion to Compel Discovery.  The court order overruled Brand Rex's objections to fifteen of AHA's Interrogatories, five of its First Set of Requests for Production and two of its Second Set.  The court order specifically required Brand Rex to "respond to the foregoing discovery . . . within thirty days of the date of this order [by October 15, 1998] unless otherwise extended by Order of this Court."  A true and correct copy of the September 14, 1998 court order is attached hereto as Exhibit 1.

27. Scott & Scott knew prior to the effective date of the Policy, attached hereto as Exhibit 2, that the Court issued an order on September 14, 1998, requiring Brand Rex to "respond to the foregoing discovery . . . within thirty days of the date of this order [by October 15, 1998] unless otherwise extended by Order of this Court."

4

28. On September 28, 1998, Scott & Scott filed an appeal of the Court's September 14, 1998 order.

29. Scott & Scott did not obtain a Stay of the September 14, 1998 order.

30. On September 30, 1998, AHA filed a Motion for Sanctions against Brand Rex for failure to comply with the court's September 14, 1998 order.  A true and correct copy of AHA's Motion for Sanctions against Brand Rex is attached hereto as Exhibit 3.

31. Scott & Scott knew prior to the May 4, 2003 effective date of the Policy that AHA had filed a Motion for Sanctions against Brand Rex on September 30, 1998.

32. On February 2, 1999, AHA moved to dismiss Scott & Scott's appeal on the ground that it was from a non-appealable Interlocutory Order.  The North Carolina Court of Appeals granted AHA's motion on February 25, 1999.

33. Scott & Scott knew prior to the effective date of the Policy that AHA moved to dismiss Scott & Scott's appeal on the ground that it was from a non-appealable Interlocutory Order.

34. Scott & Scott did not comply with the court's September 14, 1998 order compelling discovery until April 22, 1999.  As noted above, Scott & Scott should have properly served the discovery responses on October 15, 1998.

35. As a result of Scott & Scott's failure to comply with the Court's September 14, 1998 order, the Court, in its August 23, 1999 ruling on AHA's Motion for Sanctions, noted that Brand Rex's discovery response was served some 200-plus days after the September 14, 1998 Order.  The Court concluded, *inter alia*, that Brand Rex "willfully and intentionally failed to obey the Orders of this Court . . . and [that] such failure is egregious enough to justify *the sanction of striking the Defendant's answers and counterclaims and entering judgment by*

5

*default against the Defendant.*" (Emphasis Added).  A true and correct copy of the Court's August 23, 1999 order is attached hereto as Exhibit 4.

36. Scott & Scott knew prior to the effective date of the Policy that the Court issued the August 23, 1999 order, striking Brand Rex's answers and counterclaims and entering judgment by default against Brand Rex.

37. On September 2, 1999, Brand Rex filed a Motion to Set Aside the Default Judgment.  Scott & Scott argued that the appeal of the discovery order stayed the trial court's order and that the law firm would have thirty (30) days from the Court of Appeals' decision to comply with the order.

38. On October 7, 1999, the Court denied Brand Rex's Motion to Set Aside the Default Judgment.

39. Scott & Scott knew prior to the effective date of the Policy that the Court denied Brand Rex's Motion to Set Aside the Default Judgment.

40. After the default judgment was entered, AHA increased its settlement demand to $2.5 million.

41. Scott & Scott knew prior to the effective date of the Policy that AHA had increased its settlement demand to $2.5 million.

42. Thereafter, the Court ordered a hearing on damages only, which occurred from May 30, 2000, to June 30, 2000.  At both hearings, Brand Rex was represented by Scott & Scott and Mr. Ross.

43. On November 27, 2002, the Court transmitted a Memorandum of Judgment, finding that AHA was entitled to damages of $880,352 plus interest, resulting in a $1.2 million verdict.

44. Scott & Scott knew prior to the effective date of the Policy that a $1.2 million judgment was rendered against Brand Rex.

45. In February 2003, Brand Rex transferred the matter from Scott & Scott to the North Carolina law firm, Womble, Carlyle, Sandridge & Rice ("Womble Carlyle"), to handle the appeals work on the trial court's judgment.

46. Scott & Scott knew prior to the effective date of the Policy that Brand Rex transferred the case to Womble Carlyle.

47. Upon information and belief, Brand Rex did not file an appeal of the judgment but settled with AHA for approximately $800,000 shortly before the end of 2003.

48. On or around January 30, 2004, Scott & Scott received a demand letter from Gary Friedman of Mayer, Brown, Rowe & Maw, in which he alleges a claim of legal malpractice on behalf of his clients, Balfour Beatty and BICC Cables, which acquired Brand Rex.  A true and correct copy of the demand letter is attached hereto as Exhibit 5.

49. In the demand letter, Mr. Friedman bases the claim of legal malpractice against Scott & Scott to two instances:  (1) its failure to settle the AHA matter for $150,000 before trial commenced, and (2) its "glaring deficiencies" in the context of the discovery dispute that eventually led to a default judgment against Brand Rex.  *See* Exhibit 5.

50.   Mr. Friedman claims that Brand Rex could have settled in 1997, "before [Scott & Scott's] negligence," for $150,000, but that after the trial court entered the default judgment, the demand "skyrocketed" to $2.5 million.  *See* Exhibit 5.

51. On September 16, 2004, Balfour Beatty filed a civil action against Scott & Scott, David Scott, and Thomas Ross of the Ross Law Firm in the US District Court for the District

of Connecticut.  A true and correct copy of Balfour Beatty's complaint is attached hereto as Exhibit 6.

52. The complaint contains the same allegations of legal malpractice as detailed in the January 30, 2004 letter to Scott & Scott.  There is one count of negligence, *i.e.* Scott & Scott and Mr. Ross breached their "duty to exercise the degree of skill commonly exercised by an ordinary member of the legal community."  Balfour Beatty seeks compensatory damages, costs of litigation, and reasonable attorneys' fees.

53. Underwriters issued Scott & Scott the Policy for the period May 4, 2003, to May 4, 2004.  The limits of liability are $2 million for each and every claim and in the aggregate, including claims expenses, in excess of $50,000 deductible, including claim expenses.  *See* Exhibit 2.

54. Scott & Scott notified Underwriters of Balfour Beatty's claim on February 3, 2004.

55. The Policy provides that Underwriters have the right and duty to defend any Claim against the assured seeking damages which are payable under the terms of the subject policy.  Punitive damages are excluded under the policy.  *See* Exhibit 2.

56. Section IV entitled, "Exclusions," of the Policy provides:

> The coverage under this Insurance does not apply to Damages or Claim Expenses incurred with respect to: (i) any Claim arising out of any acts, errors, or omissions which took place prior to the effective date of this Insurance, if any Assured on the effective date knew or could have reasonably foreseen that such acts, errors, or omissions might be expected to be the basis of a Claim.

*See* Exhibit 2.

57. Scott & Scott knew or could have reasonably foreseen prior to the effective date of the Policy that its discovery violations, which also occurred before the effective date of the Policy, might be expected to be the basis of the legal malpractice claim as alleged by Balfour Beatty.

58. Once Underwriters learned that Scott & Scott may have knowledge or reasonably have foreseen acts, errors or omissions that might be expected to be the basis of Balfour Beatty's legal malpractice claim, they reserved their rights to raise coverage defenses at the appropriate juncture while still providing Scott & Scott with defense counsel.

59. In letters dated March 19, 2004, March 25, 2004, and October 1, 2004, attorneys for Underwriters reserved Underwriters' right to raise coverage defenses at the appropriate juncture.  True and correct copies of Underwriters' reservation of rights letters are attached hereto as Exhibit 7.

60. Specifically, in the March 25, 2004 letter attorneys for Underwriters reserved Underwriters' rights to a raise coverage defense pursuant to exclusion (i).  *See* Exhibit 7.

61. An actual controversy exists between Scott & Scott and Underwriters as to whether Underwriters have any obligation to provide coverage for claims made under the Policy.

**COUNT I**

**PRECLUSION OF COVERAGE UNDER THE POLICY'S "PRIOR KNOWLEDGE" EXCLUSION**

62. Plaintiffs repeat and reallege the allegations of paragraphs 1-61 of this complaint as if fully set forth herein.

63. Scott & Scott's claim against Underwriters arises from acts, errors, or omissions which took place prior to the effective date of the Policy.

9

64. Scott & Scott knew or should have reasonably foreseen prior to the effective date of the Policy that such acts, errors, or omissions that might be expected to be the basis of Balfour Beatty's legal malpractice claim legal malpractice prior to inception of coverage.

65. Based on the plain and clear language of exclusion (i) contained in the Policy, Scott & Scott is precluded from coverage.

66. Accordingly, the court should declare that Defendants are not entitled to coverage under the Policy.

## **JURY DEMAND**

Underwriters demand a trial by jury for all issues so triable.

WHEREFORE, Underwriters respectfully ask this Court for the following relief:

(a) A judgment declaring that Underwriters has no obligation to defend or indemnify the defendants or any other person or entity in connection with a certain civil action (<u>BICC Cables Corp., et al vs. Scott & Scott, LLC, etal</u>, Docket No. 304 CV1545 RND) pending in the U.S. District Court for the District of Connecticut.

(b) A judgment declaring that Underwriters have no obligation to defend or indemnify any person or entity in connection with any claim, lawsuit or other legal proceeding.

PLAINTIFF

BY_____
ROBERT M. SHIELDS, JR.
**Horton, Shields & Knox, P.C.**
90 Gillett Street
Hartford, CT 06105
(860) 522-8338)
*Fax* (860) 728-0401
Fed. Bar. ID# CT 06685

Attorneys for Certain Underwriters at Lloyd's of London